IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ALAN R. MALLORY,<br><br>                    Plaintiff,<br><br>vs.<br><br>DOUGLAS COUNTY CORRECTIONS MEDICAL STAFF, and HEATHER WETZL, Public Defenders - Social Worker;<br><br>                    Defendants. | 8:17CV124<br><br>MEMORANDUM AND ORDER |

Plaintiff filed a Complaint on April 10, 2017. (Filing No. 1.) He has been given leave to proceed in forma pauperis. (Filing No. 8.) Plaintiff subsequently filed what the court will consider to be a supplement to his Complaint. (*See* Filing No. 6.) The court now conducts an initial review of Plaintiff's Complaint and Supplement to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

## I. SUMMARY OF COMPLAINT

Plaintiff is a prisoner confined at the Douglas County Correctional Center ("DCCC"). (Filing No. 1 at CM/ECF p. 2.) He names as Defendants in his Complaint the DCCC Medical Department and any "readable names on the kites" he has sent, as well as Heather Wetzl ("Wetzl"), a social worker with the Douglas County Public Defender's Office. (*Id*.) The only names that the court can discern from Plaintiff's "kites," or inmate request forms attached to his Complaint and Supplement, are "M. Hubbard RN" and "Rae Ridler." (*See* Filing No. 1 at CM/ECF pp. 12, 19.) In his Supplement, Plaintiff adds Dr. Ash as a defendant. (Filing No. 6.) He sues DCCC Medical Department in its official capacity, and

Wetzl in her individual capacity. (Filing No. 1 at CM/ECF p. 2.) He sues Dr. Ash in her "personal/prof. capacity." (Filing No. 6 at CM/ECF p. 1.) The court understands this to mean that Plaintiff sues Dr. Ash in her individual and official capacities. Plaintiff seeks monetary relief and "a full investigation and correction of policies" at DCCC. (Filing No. 1 at CM/ECF p. 5.)

Condensed and summarized, Plaintiff alleges that DCCC medical staff have denied medications prescribed to him as treatment for conditions diagnosed prior to his incarceration. He asserts that medical doctors have diagnosed him with a "condition of crushed 4 and 5th vertebrae which pinch a nerve causing the chronic pain that led to the depression/anxiety and insomnia localized in [his] neck – complicated by the degenerative arthritis there." (*Id*. at CM/ECF p. 22.) He states that, when he turned himself in, he brought his medications and supporting documentation from doctors and pharmacies. (*Id*. at CM/ECF p. 4.) Plaintiff's medications include a "very strong" anti-inflammatory medication, muscle relaxers, hydrocodone, and two psych medications – one being Seroquel. (*Id*. at CM/ECF p. 22.) Plaintiff believes that there is a conspiracy to deny him of these medications, and Wetzel is included within that conspiracy because Plaintiff learned from his lawyer that Wetzel verified that DCCC is giving him all of his medications. (*Id*.) He claims that DCCC has damaged his heart by "abruptly stopping" his medications, and he has now been informed that he needs bypass surgery and a pace maker. (*Id*. at CM/ECF p. 5.) Finally, Plaintiff states that DCCC has placed him in the "med unit" for observation because he experiences chest pain, but they have placed him in the furthest cell in the unit where no one attends to him as retaliation for his "persistence." (*Id*. at CM/ECF p. 4.) He admits that he receives blood pressure medicine, prostate medication, and one psych medication. (*Id*. at CM/ECF pp. 4-5.)

In his Supplement, Plaintiff asserts that Dr. Ash prescribes "all or mostly all" medication to one race of inmates only. (Filing No. 6 at CM/ECF p. 1.) He states that Dr. Ash prescribes medications to "Kaslov(f)," who sells them because he does not need them and "brags about how he plays the med-department."

2

According to Plaintiff, Dr. Ash does not prescribe them to Plaintiff and another inmate, Christopher Carr, who do need them. (*Id.* at CM/ECF pp. 1-2.) He alleges the race of "Kaslov(f)," from what the court can understand from Plaintiff's handwriting, as "dark." (*Id.*) Plaintiff also generally asserts that there was another medical-involved death at DCCC, and he needs help "given the current policies and biased practices." (*Id.*)

Plaintiff's attached inmate request forms contain staff responses to his medication requests and reveal details about his care at DCCC. On March 17, 2017, "M. Hubbard RN" responded to Plaintiff, "While in our facility, it is to our doctor's discretion as to what she feels is necessary for your treatment. You are receiving the medication that our doctor feels is necessary for you." (*Id.* at CM/ECF p. 12.) On March 18, 2017, an unidentified staff member responded to Plaintiff, "Medical reviewed your medications and made decisions regarding your treatment and requested off site medical records to continue care. All decisions regarding health care are deferred to the medical provider." ([Filing No. 6 at CM/ECF p. 4](#).) An unidentified "CMA" informed Plaintiff on more than one occasion during March of 2017 that DCCC medical staff only prescribe certain medications, a low dose of Seroquel is not one of those medications, and scheduled Plaintiff to see a psychiatrist. ([Filing No. 1 at CM/ECF pp. 13-14](#), [16](#).) On March 27, 2017, an unidentified staff member informed Plaintiff that they verified his medications with Hy-Vee and checked his property where they found his Flomax, a prostate medication, and gave it to the doctor for review. (*Id.* at CM/ECF p. 17.) On March 28, 2017, "Rae Ridler" responded to Plaintiff's request for an evaluation to discuss his medications, "Please provide your attorneys name and contact information for an evaluation. Once approved by them you can be placed on the waiting list." (*Id.* at CM/ECF p. 19.) On April 2, 2017, an unidentified nurse noted that Plaintiff saw the doctor on March 22, 2017, and that Plaintiff had a normal EKG reading on April 2nd despite low readings on one prior occasion, with no present edema. ([Filing No. 6 at CM/ECF p. 3](#). *See* [Filing No. 1 at CM/ECF p. 5](#).) S/he noted that Plaintiff was scheduled for a chronic care appointment the week of April 2nd. ([Filing No. 6 at CM/ECF p. 3](#).)

## II. APPLICABLE STANDARDS OF REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting

4

under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

## III. DISCUSSION

### A. DCCC Medical Department and Medical Staff

The court liberally construes Plaintiff's claims against the DCCC Medical Department and "any readable names [of its staff from Plaintiff's] kites"[1] as claims against Douglas County. As a municipal defendant, Douglas County may only be liable under section 1983 if its official "policy" or "custom" caused a violation of the plaintiff's constitutional rights. *Doe By & Through Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. *Jane Doe A By & Through Jane Doe B v. Special School Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir. 1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). To establish the existence of a governmental custom, a plaintiff must prove:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

---

[1] *See Alexander v. Hedback*, 718 F.3d 762, 766 n.4 (8th Cir. 2013) ("'This court has held that, in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity.'") (quoting *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)). *See also, Johnson, supra* ("A suit against a public employee in his or her official capacity is merely a suit against the public employer.").

5

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe*, 901 F.2d at 646.

Here, Plaintiff does not allege that there is a continuing, widespread, persistent pattern of unconstitutional misconduct by Douglas County's employees, or that Douglas County's policymaking officials were deliberately indifferent to or tacitly authorized any unconstitutional conduct. In addition, Plaintiff does not allege that an unconstitutional custom was the moving force behind his injuries. He perhaps attempts to do so in his Supplement when he alleges that Dr. Ash discriminatorily prescribed medication to one other inmate and when he generally states that there was a medical-involved death at DCCC. However, these allegations nor his conclusory remark of "given the current policies and biased practices" satisfy the *Jane Doe* standard. Accordingly, Plaintiff has failed to allege sufficient facts to "nudge" his claims against Douglas County across the line from conceivable to plausible under the *Jane Doe* standard.

Alternatively, at a more fundamental level, Plaintiff does not allege a constitutional violation. The court understands Plaintiff to assert that Douglas County acted with deliberate indifference to his serious medical needs.[2] The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs. *Gregoire v. Class*, 236 F.3d 413,

---

[2] Nor has Plaintiff stated a plausible retaliation claim. Staff transferred him to the "med" unit after he complained of chest pains and, as explained below, he is receiving continued care and medications that DCCC medical staff feel are necessary.

6

417 (8th Cir. 2000). Plaintiff must demonstrate that (1) he suffered from objectively serious medical needs, and (2) the defendants knew of, but deliberately disregarded, those needs. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

Plaintiff alleges that DCCC medical staff violated his Eighth Amendment rights by refusing to prescribe him certain medications that he was prescribed prior to his incarceration. However, Plaintiff's inmate request forms reveal he is being prescribed what DCCC medical staff believes is necessary for his continued care after a review of his medications and medical files. An EKG was performed on him and he was scheduled for a chronic care appointment just a week prior to filing his Complaint. In short, Plaintiff's inmate request forms do not reveal deliberate indifference, but rather, Plaintiff's mere disagreement with his treatment. *See Pietrafeso v. Lawrence County, S.D.*, 452 F.3d 978, 983 (8th Cir. 2006) (showing of deliberate indifference is greater than even gross negligence and requires more than mere disagreement with treatment decisions); *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995) (inmate who showed prison doctors disagreed with medications given prior to incarceration showed no more than disagreement with proper course of treatment).

For the aforementioned reasons, Plaintiff fails to state a plausible claim against Douglas County.[3]

## B. Heather Wetzel

Plaintiff believes that Wetzel is engaged in a conspiracy, presumably with the DCCC Medical Department and its staff, to deprive him of his medications. Allegations of a conspiracy must be pleaded with sufficient specificity and factual support to suggest a meeting of the minds. *Smith v. Bacon*, 699 F.2d 434, 436 (8th Cir. 1983). Plaintiff's only basis for any conspiracy is that Wetzel verified that

---

[3] This includes Dr. Ash in her official capacity.

DCCC is giving him all of his medications. This allegation is not plead with sufficient specificity and factual support to suggest a meeting of the minds. Instead, it constitutes nothing more than conjecture. And, in light of the court's finding above, there can be no conspiracy if there was no violation of Plaintiff's rights.

## C. Dr. Ash – Individual Capacity

Liberally construed, Plaintiff asserts an equal protection claim based on race against Dr. Ash. Prisoners are protected under the Fourteenth Amendment from invidious discrimination based on race. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The Equal Protection Clause generally requires the government to treat similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "Dissimilar treatment of dissimilarly situated persons" does not violate the Equal Protection Clause. *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994).

Plaintiff fails to state a plausible equal protection claim. As a threshold matter, he does not allege his own race or that of Christopher Carr, and the court is unsure of even Kaslov(f)'s race. Further, Plaintiff's factual allegation that Dr. Ash prescribes certain medication to *one* other inmate, Kaslov(f), but not to Plaintiff and another inmate does not give rise to an inference of invidious discrimination based on race. *See Howard v. Jaramillo*, 2008 WL 5381469 at *8 (D. Colo. 2008) (noting that inmate's subjective belief that he was a victim of racial discrimination is insufficient to raise equal protection violation). There are a number of reasons other than race that Kaslov(f) may receive medications that Plaintiff does not, particularly if Kaslov(f) "plays" the "med-department" but primarily because DCCC medical staff determined that Plaintiff does not need them, as explained above. Because Plaintiff does not need them, he is "dissimilar" from Kaslov(f), who does need them according to the "med-department" that he "plays." Plaintiff's allegations and conclusory remark about "biased" policies and practices, without more, do not state a plausible equal protection claim.

IT IS THEREFORE ORDERED that:

1.  Plaintiff shall have until **June 29, 2017**, to file an amended complaint that states a claim upon which relief may be granted against Defendants. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this case without further notice to Plaintiff.

2.  The clerk's office is directed to set a pro se case management deadline in this matter: **June 29, 2017**: Check for amended complaint.

Dated this 30th day of May, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge